BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: PFAS Products Liability and Environmental Liability Litigation / AFFF Products Liability Litigation | )<br>)<br>)    MDL Docket No. 2873 |

### NAPOLI SHKOLNIK PLAINTIFFS' RESPONSE IN OPPOSITION TO 3M and TYCO / CHEMGUARD'S MOTION FOR TRANSFER PURSUANT TO 28 U.S.C. § 1407

### INTRODUCTION

Plaintiffs, individuals, private businesses, municipalities, and water districts (the "Napoli Shkolnik Plaintiffs"), respectfully submit this Response in partial Opposition to Movants' *Motions for Transfer of Actions* ("Motions") (Dkt. 1 and Dkt. 4) opposing consolidation and transfer to the U.S. District Court for the District of Massachusetts or the Southern District of New York as transferee courts. A full schedule of all Napoli Shkolnik's cases is attached as Exhibit "A.[1]"

The Napoli Shkolnik plaintiffs collectively represent more than two thirds of the related cases that Defendants seek to have centralized. Furthermore, the plaintiffs that Napoli Shkolnik represents includes virtually every category of claim that is the subject of the original petition (AFFF limited) and the expanded 3M Petition (All PFAS):

---

[1] Plaintiffs in *Bell, et al. v. 3M Company, et al.*; Case 1:16-cv-02351 currently before the Hon. R. Brooke Jackson in the District of Colorado, appearing on Schedule "A," are included in the Napoli Shkolnik Plaintiffs' case count; however, their interests are being spoken for by Burg Simpson Eldredge Hersh & Jardine, PC who have been appointed as Lead Class Counsel for the putative class and their filing speaks for those Plaintiffs and the putative class.

1

| Type of Claim | Number of Cases |
|---|---|
| Municipal Water District Plaintiff with AFFF Contamination | 2 |
| Individual Plaintiff Personal Injury from AFFF Defendants and Non-AFFF Defendants | 74 |
| Individual Property Damage Claims from AFFF Defendants and Non-AFFF Defendants | 74 |
| Class Action Medical Monitoring against AFFF Defendants and Non-AFFF Defendants | 33 |
| Class Action Personal Injury against AFFF Defendants and Non-AFFF Defendants | 74 |
| Class Action Products Liability against AFFF Defendants and Non-AFFF Defendants | 74 |
| Manufacturing Byproduct Cases Against Non-AFFF Defendants, including against St. Gobain | 16 |

Initially, it was the position of the various clients represented by Napoli Shkolnik that an MDL proceeding forcing coordination of cases that are overwhelmingly represented by the same group of law firms, that include varying types of defendants, multiple competing defendants (including federal, state, and municipal entities), varying state-specific statutes and causes of action, varying legal theories, seeking varying forms of injunctive and monetary relief, and varying costs and injuries sustained, is unnecessary. Indeed, Napoli Shkolnik had been informally coordinating with, and in many of the cases, been co-counsel with, other plaintiffs, and welcomes the opportunity to continue to work cooperatively with all counsel.

However, given that the 3M Movants have sought to expand the aqueous film-forming foam ("AFFF") limited MDL into a massive *Mega PFAS MDL*, encompassing, all perfluorinated chemicals (PFCs) that are in litigation across the country, Napoli Shkolnik Plaintiffs now submit that the Panel should grant, in-part, Defendants' motion and order centralization. However, the Napoli Shkolnik Plaintiffs support the selection of the Southern District of Ohio and Judge Edmund A. Sargus, Jr. as the most logical transferee forum for such a *Mega PFAS MDL*.

Judge Sargus not only has more MDL experience than either jurist proposed by movants, he also has specific MDL experience with the main toxins at issue in this litigation *i.e.* PFCs and is the Judge assigned to *City of Dayton v. 3M Company*, *et al*, Case: 3:18-cv-00331 and *Hardwick v. 3M Company, et al.*, Case: 2:18-cv01185. Further, by including all PFCs in the *Mega PFAS MDL*, this new MDL would encompass the already existing MDL 2433: *In re: E. I. du Pont de Nemours and Company C-8 Personal Injury Litigation* in the Southern District of Ohio, overseen by Judge Sargus, that exists because of PFAS contamination and exposure and has been ongoing since $2013^2$.

I. **FACTUAL BACKROUND RELATED TO C-8 AND PFAS**

PFAS and C-8 have been studied extensively and notable work was performed by the C-8 Science Panel formed out of a class action settlement arising from contamination from DuPont's Washington Works located in Wood County, West Virginia.$^3$ The C-8 panel consisted of three epidemiologists specifically tasked with determining whether there was a probable link between PFAS/C-8 exposure and human diseases. In 2012, the panel found probable links between PFAS and kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, pregnancy induced hypertension (including preeclampsia), and hypercholesterolemia.

Movants manufactured, marketed, and sold numerous products containing PFAS. PFAS are found in everyday, household products, industrial/commercial products, as well as AFFF a firefighting product used to control and extinguish aviation, marine, fuel, and other flammable-

---

[2] In addition to Judge Sargus, Judge Algenon L. Marbley is the jurist with the second greatest knowledge of C-8 and PFAS. He is also in the Southern District of Ohio with his chambers down the hall from Judge Sargus. He oversaw *The Little Hocking Water Association, Inc. v. E.I. Du Pont De Nemours and Company*, Case: 2:09-cv-01081, a case where the Little Hocking wellfield was contaminated by PFAS and Judge Marbley oversaw years of intense litigation prior to the case ultimately settling.

[3] *Jack W. Leach et al. v. E. I. du Pont de Nemours and Company and Lubeck Public Service District*, Case No. 01-C-608, Circuit Court of Wood County, West Virginia.

liquid fires, used by the military and others throughout the country. PFAS are toxic, do not biodegrade, are persistent in the environment, move easily through soil and groundwater, absorb into concrete, and pose a significant risk to human health and safety.

Movants were aware of this since at least the 1960's and 1970's but elected to use these chemicals and not warn their customers, placing profits over human health. As the originator of PFAS and a main manufacturer of them, 3M distributed information to other manufacturers, including DuPont / Chemours, while keeping such information well hidden from the public.

As a result of the *Leach* settlement and the following C-8 Science Panel's findings on PFAS, thousands of individual cases were filed and were then centralized in the Southern District of Ohio in the MDL *In re: E. I. Dupont De Nemours and Company C-8 Personal Injury Litigation* CASE: 2:13-md-02433 before Judge Sargus in 2013. There was extensive litigation in this MDL including ruling on admissibility of experts under *Daubert* and multiple motions for summary judgment prior to the settlement that occurred in February 2017. In addition to having many victims of PFAS contamination, Judge Sargus in the Southern District of Ohio has more knowledge of PFAS than does any other court in the nation and is in the best position to move this litigation to closure.

**ARGUMENT**

I.  **Coordination and the History of PFAS Litigation**

Pursuant to 28 U.S.C. § 1407(a), the Panel should establish an MDL where cases "involv[e] one or more common questions of fact," and where "transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." The burden is on the moving party to establish that centralization is warranted. *See In re G.D. Searle & Co. "Copper 7" IUD Prods. Liab. Litig.,* 483 F. Supp. 1343,

1345 (J.P.M.L. 1980). Even where one or more common questions of fact exist, the movant must show that the benefits of transfer outweigh the disadvantages. *Id.* "[C]entralization under Section 1407 should be the last solution after considered review of all other options" (internal quotation marks omitted). *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011). Had this request for coordination been limited to AFFF as contemplated by the original movant, there would be other options available, including informal coordination among the limited firms involved.

As it relates to the AFFF cases alone, the establishment of an MDL at this stage would not serve the "convenience of parties and witnesses," nor would it "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). As to the AFFF cases, Movants have not satisfied their burden under 28 U.S.C. § 1407(a) and the Motion should be denied. However, given the wide and expansive reach that Movant 3M, now suggests, it is believed that continued informal coordination would be impossible and the Panel should order Coordination before Judge Sargus.

As the Panel is aware, thousands of individual PFAS cases were filed arising from contamination from DuPont's Washington Works located in Wood County and were centralized before Judge Sargus in the Southern District of Ohio in *In re: E. I. Dupont De Nemours and Company C-8 Personal Injury Litigation* 2:13-md-02433. In that MDL there was extensive litigation including rulings on the admissibility of experts under *Daubert* and multiple motions for summary judgment and three trials to verdict, an appeal to the Sixth Circuit prior to a $670 million settlement the plaintiffs and defendants agreed upon to resolve the PFOA claims there.

As such, it is abundantly clear that Judge Sargus in the Southern District of Ohio has more knowledge of PFAS than does any other court in the nation[4].

Should the Panel not wish to assign this matter to Judge Sargus the collective Napoli Shkolnik Plaintiffs suggest that the Hon. R. Brooke Jackson in the District of Colorado be considered as the only other appropriate jurist in the country that should be considered as the transferee court. Judge Jackson, presiding over *Bell et al v. 3M Company et al*, Case 1:16-cv-02351, has advanced his case far beyond motions to dismiss, having conducted expert witness disclosure, issued *Daubert* rulings, and is scheduled to hear oral argument on Class Certification the day following the hearing before this court on November 29, 2018. It appears that the Movants are trying to forum shop this case away from Judge Jackson and the impending class certification hearing, suggesting that the Panel establish a *Mega MDL* encompassing every type of claim related to PFCs and alternatively suggest two jurists, one in the Southern District of New York, and the other in the District of Massachusetts, as potential transferee courts though neither of them have advanced a case past motions to dismiss.

With class certification currently set to be argued before Judge Jackson the day after the JPML hearing, it is clear that the *Bell* matter has already involved substantial litigation, including briefing and ruling upon *Daubert* issues as to the parties' class experts. Yet, Movants do not even mention the substantial litigation or its progress in their motions. Given the amount of time and effort the *Bell* defendants have already expended in litigation, it is clear that Movants' request of the JPML is no more than simple gamesmanship and flies in the face of the very purpose of §

---

[4] As a result of overseeing *The Little Hocking Water Association, Inc. v. E.I. Du Pont De Nemours and Company*, Case: 2:09-cv-01081, Judge Marbley is the jurist with the second greatest knowledge of C-8 / PFAS in the country and both Judge Sargus and Judge Marbley are in the Southern District of Ohio.

6

1407. Defendants should not be allowed to use the MDL process to forum shop the *Bell* case away on the eve of class certification.

**II.     Centralization Is Required for a *Mega PFAS MDL* at this Juncture Despite Overlap of Counsel.**

As of October 15, 2018, there were 101[5] cases associated within this proposed MDL with 71% of those cases represented by Napoli Shkolnik.

|  | Total Number | % Napoli Shkolnik | % 3M, DuPont / Chemours, Saint-Gobain, Tyco, and National Foam |
|---|---|---|---|
| AFFF Cases | 75% (76) | 79% (60) | 100% (76) |
| Non-AFFF Cases | 25% (25) | 64% (16) | 100% (25) |
| Total | 100% (101) | 75% (76) | 100% (101) |

Reviewing the sheer number of cases it is apparent that the Napoli Shkolnik plaintiffs predominate in the cases and all of the cases include at least one of the primary manufacturers of PFC products, mainly 3M, DuPont / Chemours, Saint-Gobain, Tyco, and National Foam. In addition, because Napoli Shkolnik have been leaders in this litigation, we are aware of many, many, more cases that will likely be filed by other law firms who we have spoken with over the course of the last year.[6]

---

[5] This includes the 16 cases filed in the Northern District of New York by Napoli Shkolnik relating to Defendant Saint Gobain's contamination of the water of the Village of Hoosick Falls as a result of their operation of the McCaffrey Street plant that Plaintiffs move to associate should the JPML grant consolidation. Movants omission of these cases is puzzling as they included three non-Napoli Shkolnik cases (1:17-cv-01054, 1:17-cv-01056, 1:17-cv-01058) concerning PFAS contamination from the exact same site.

[6] Securing representation of a city, state, county municipality, or private water district is not simple, quick, or easy. Likewise, bringing class claims and defining an exposed area where this devastating pollution occurred takes significant research and time, notwithstanding we are aware of many, many, more claims and the fact that many different law firms appear to be actively involved in retaining and investigating these types of PFAS cases. Of course, there are thousands of personal injury cases that will likely become part of the MDL as well and will surly have various counsel as well.

This Panel has held that informal coordination, in lieu of forced coordination, is "particularly appropriate" where there is significant overlap in counsel. *In re Rite Aid Corp. Wage & Hour Employment Practices Litigation*, 655 F. Supp. 2d 1376, 1377 (J.P.M.L. 2009). ("Counsel in all actions can avail themselves of alternatives to transfer that may minimize whatever possibilities there are of duplicative discovery and/or inconsistent pretrial rulings. Cooperation among counsel and the parties is particularly appropriate here, where plaintiffs in four of the six actions encompassed by the motion share counsel." (citations omitted)). The *Mega PFAS MDL* proposed is simply too broad to be successful while relying on informal coordination among the parties.

### III. Should the Panel Order Centralization, the U.S. District Court for the Southern District of Ohio Before Judge Sargus Is the Best-Suited Choice.

Although the undersigned has the highest regards for Judge Jackson[7] and the work he has undertaken in the *Bell* litigation, given Movants' belated request to make this a *Mega PFAS MDL,* it is believed that the Southern District of Ohio[8] is the most appropriate forum, as opposed to the District of Massachusetts or Southern District of New York as Movants propose.

#### A. The Transferee Court and Judge Are Determined on a Case-Specific Basis

The MDL statute, 28 U.S.C § 1407, does not prescribe specific factors by which the Panel is to designate the transferee district or judge. Under Section 1407(a), unlike the general transfer statute, 28 U.S.C.A. § 1404(a), transfer can be ordered without regard to the usual venue requirements and limitations on personal jurisdiction. However, the panel has developed a series

---

[7] It is without question that if the Panel determines that this should be limited to AFFF cases then Judge Jackson should be considered as a potential transferee judge.

[8] Although not determinative, the Southern District of Ohio is a convenient, central location in the country for travel and is well equipped to handle this litigation. Columbus, Ohio is a major metropolitan area with flights available from all areas of the country.

8

of common sense factors in determining the appropriate court and jurist. As more fully explained below, the Southern District of Ohio and Judge Sargus are the appropriate venue and jurist.

### B. Judge Sargus' MDL Experience in the C-8 Litigation Makes Him Most Qualified to Oversee the Proposed MDL

There are currently 7 MDL's in the District of Massachusetts.[9] Judge Casper, proposed by the Movants, oversaw MDL 2503: *In Re: Solodyn (Minocycline Hydrochloride) Antitrust Litigation*. Her relatively recent appointment to the federal bench (2010) and limited MDL experience, having only overseen *In Re: Solodyn*, make her ill-suited to oversee the proposed MDL in this litigation. *In Re: Solodyn* involved a total of only 18 cases[10] and was an anti-trust case. Anti-trust issues in no way relate to or prepare the court for issues involving various PFCs, multiple and diverse defendants, varying routes of exposure, including through facilities owned by the Department of Defense, and plaintiffs ranging from cities, towns, counties, and water districts, to individuals nationwide who have been exposed to these toxic substances. Further, the present litigation involves more than 101 cases already filed, hundreds, if not thousands, more are anticipated to be filed, and has a vast, nation-wide scope. The four actions that are currently before Judge Casper are in the early stages of litigation without any meaningful, substantive discovery having yet occurred. None of them have proceeded past motions to dismiss. As such, Judge Casper is not in a better position than any other jurist with respect to the particularities and complexities associated with PFCs. Judge Casper's experience does not provide her the necessary background and experience to oversee a *Mega MDL* such as the Movants seek here.

---

[9] http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-September-17-2018.pdf (accessed October 10, 2018).
[10] http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_Actions_Pending-September-17-2018.pdf (accessed October 10, 2018).

Movants' other proposal of the Hon. Judge Kenneth M. Karas is similarly not well-suited to handle the proposed *Mega MDL*. The Southern District of New York is currently overseeing twenty-one MDLs,[11] Judge Karas has only overseen one MDL previously, MDL 2450: *In re Ford Fusion and C-Max Fuel Economy Litigation*. This MDL involved the 2013 Ford Fusion Hybrid and 2013 Ford C-Max automobiles regarding Ford's alleged misrepresentation of the vehicles' fuel economy. In total, this litigation consisted of 18 actions that were centralized.[12] Issues relating to the fuel economy of automobiles do not translate into experience that would assist Judge Karas in overseeing a *Mega MDL* with a broad range of statutory, both federal and state, and state common law claims all relating to the use, marketing, distribution, and exposure of toxic PFCs. Further, the PFC cases that are currently before Judge Karas are in the earliest stages of litigation with no substantive discovery or motion practice having occurred. As such, Judge Karas is not in a better position than any other jurist with respect to the particularities and complexities associated with PFCs.

The Southern District of Ohio currently has only three MDL's pending before it[13]. Two of the MDLs are currently before the Judge Sargus and MDL 2433, *In Re: E. I. du Pont de Nemours and Company C-8 Personal Injury Litigation* which is in the final stages of settlement.

As Movants Tyco/Chemguard states in their motion "[i]ndeed, the Panel has already granted MDL treatment in other PFAS litigation that presented similar issues. *See In re: E.I. du Pont de Nemours And Co. C-8 Pers. Injury Litig.*, 939 F. Supp. 2d 1374, 1374 (J.P.M.L. 2013) (granting MDL treatment where all of the constituent cases arose "out of plaintiffs' alleged

---

[11] http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-September-17-2018.pdf (accessed October 12, 2018)

[12] http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_Actions_Pending-September-17-2018.pdf (accessed October 10, 2018).

[13] http://www.ohsd.uscourts.gov/multidistrict-litigation-home (accessed October 10, 2018)

ingestion of drinking water contaminated with a chemical, C–8 (also known as perfluorooctoanoic acid (PFOA) or ammonium perfluorooctanoate (APFO))" and "[a]ll of the plaintiffs in this litigation allege that they suffer or suffered from one or more of six diseases identified as potentially linked to C–8 exposure")." (Dkt. 4-1, Pg. 7). Movant 3M also cites to the *C-8* MDL as an example where the Panel centralized litigation from PFOA groundwater contamination. (Dkt. 1-1, Pg. 8).

As both Movants cite to the *C-8* MDL currently before Judge Sargus as an example of the Panel granting consolidation for the very same toxin at issue in the present litigation, it can only be seen as naked gamesmanship and blatant forum shopping that the Movants would not seek to have the 101 plus cases that are related to the *C-8* litigation in front of Judge Sargus.

Judge Sargus has more MDL experience than either Judge Casper or Judge Karas and is currently presiding over an MDL that is related to the very cases they seek to consolidate for the very same toxin they seek consolidation for. As such, Judge Sargus is the appropriate jurist to oversee Movants' proposed MDL.

### C. The Southern District of Ohio's Current Docket Weighs in Favor of Consolidation Over Movants' Proposed Venues

The Southern District of Ohio is currently available to handle the proposed MDL. There are currently only three multidistrict litigations pending in the Southern District of Ohio, one of which is *In re: E.I. du Pont de Nemours and Company C-8 Personal Injury Litigation* that has already been discussed *supra*. The burden on the proposed District's docket is a factor to be considered by the Panel. *See, for example, In re Horizon Organic Milk Plus DHA Omega-3 Marketing and Sales Practices Litigation,* 844 F. Supp. 2d 1380, 1381 (U.S.J.P.M.L. 2012).

As the Southern District of Ohio has only three MDLs currently and the present proposed MDL is related to the settled *C-8* litigation this common sense factor that is often applied by the

11

Panel favors the Southern District of Ohio over either District proposed by Movants, especially as the District of Massachusetts currently has 19 MDLs and the Southern District of New York currently has 21.

### D. With Nationwide Litigation, a Centrally Located Jurisdiction Is Preferred

When there is nationwide litigation, as is the case here, a centrally located, readily accessible jurisdiction is preferred. *See, for example, In re CenturyLink Residential Customer Billing Disputes Litigation,* 2017 WL 4414232 at *2 (U.S.J.P.M.L. 2017) (Minneapolis offers a central, readily accessible venue for all parties); *In re Liquid Aluminum Sulfate Antitrust Litigation*, 159 F. Supp. 3d 1382, 1383 (U.S.J.P.M.L. 2016) (selecting jurisdiction with the closest nexus to the litigation and where a related action was already pending); *In re Blue Buffalo Co., Ltd., Marketing and Sales Practices Litigation*, 53 F. Supp. 3d 1385, 1386 (U.S.J.P.M.L. 2014) (Panel concluded that the Eastern District of Missouri was appropriate because discovery, including laboratory testing, was ongoing there and because St. Louis provided a geographically central location for this nationwide litigation); *In re Medtronic, Inc., Sprint Fidelis Leads Products Liability Litigation*, 536 F. Supp. 2d 1375, 1376 (U.S.J.P.M.L. 2008) (JPML found that the transferee district provided a centrally located forum for actions filed in several locations nationwide); *In re Wireless Telephone 911 Calls Litigation*, 259 F. Supp. 2d 1372, 1374 (U.S.J.P.M.L. 2003) (Geographically central location would be relatively convenient for parties).

The Southern District of Ohio is a geographically central district and Chief Judge Sargus is located in Columbus, Ohio, a major metropolitan hub. The Southern District of Ohio is a convenient location for air travel as the John Glenn Columbus International Airport is an international airport located just 6 miles east of downtown Columbus with regular, daily flights to all major cities. Neither the District of Massachusetts in Boston nor the Southern District of

New York in White Plains are centrally located. Further, neither Movant has its headquarters or principal place of business in either of these Districts. As such, Movants' request is no more than forum shopping and this common sense factor supports the selection of the Southern District of Ohio as the preferred venue.

### E. The Majority of Responding Parties Prefer the Southern District of Ohio as the Transferee Venue

When determining the transferee venue, it is appropriate to consider the preference of the parties. *See, for example, In re Horizon Organic Milk Plus DHA Omega-3 Marketing and Sales Practices Litigation,* 844 F. Supp. 2d 1380, 1381 (U.S.J.P.M.L. 2012) (Panel ordered transfer to the Southern District of Florida because several plaintiffs favored centralization there and because that district was presiding over fewer MDL cases than other proposed districts); *In re Automotive Wire Harness Systems Antitrust Litigation*, 844 F. Supp. 2d 1367, 1368 (U.S.J.P.M.L. 2012) (most responding parties supported centralization in the Eastern District of Michigan).

It does not appear that any Plaintiff supports either the Southern District of New York or the District of Massachusetts for the transferee venue. However, as is clear from this Response and the responses of the other plaintiffs, the vast majority of Plaintiffs prefer the Southern District of Ohio to Movants' proposed venues and no Plaintiffs oppose this venue. As such, this common sense factor supports the Southern District of Ohio as the transferee venue.

### F. With Over 3,500 Settled C-8 Cases and a Constituent Action Already Pending, the Southern District of Ohio is the Preferred Venue

It is appropriate to consider the number of pending cases when making the determination as to which transferee court is most appropriate. *See, for example, In re Packaged Ice Antitrust Litigation,* 560 F. Supp. 2d 1359, 1361 (U.S.J.P.M.L. 2008) (Transfer was ordered to district with the largest number of related pending cases); *In re Wells Fargo Mortg. Lending Practices*

13

*Litigation*, 545 F. Supp. 2d 1371, 1372 (U.S.J.P.M.L. 2008) (Three actions, including the first-filed case, were pending in the transferee district.); *In re Air Crash at Belle Harbor, N.Y. on November 12, 2001*, 203 F. Supp. 2d 1379, 1380–1381 (U.S.J.P.M.L. 2002) (Panel noted that 24 of 79 known federal court actions arising from airline crash were pending in Southern District of New York.).

Neither the Southern District of New York nor the District of Massachusetts has the greatest number of cases nor the first filed case. Of all the cases Movants identified as associated cases, the first filed is *West Morgan-East Lawrence Water and Sewer Authority et al v. 3M Company et al*, Case 5:15-cv-01750 in the Northern District of Alabama, with the most cases being filed in the District of Colorado (48). However, in the Napoli Shkolnik plaintiffs' opinion, the District with the greatest number of related cases is the Southern District of Ohio with the over 3,500 C-8 cases that have been recently resolved in 2017. Further, the constituent cases of *City of Dayton v. 3M Company, et al.*, Case 3:18-cv-00331 and *Hardwick v. 3M Company, et al.*, Case: 2:18-cv01185 are situated in the Southern District of Ohio and is currently before Judge Sargus. As such, this common sense factor clearly weighs against Movants' preferred venue and in favor of Judge Sargus in the Southern District of Ohio.

### G. Chief Judge Sargus Is Qualified and Available to Manage this MDL

Chief Judge Sargus was appointed to the federal bench by President Clinton in 1996. Prior to his appointment, he had a distinguished career in both the private and public sphere. He is also currently a professor at the Moritz College of Law, The Ohio State University. He has received numerous honors and awards. Most importantly, and discussed throughout this opposition, Judge Sargus is familiar with the key issues (and on the highest level) as they relate to PFCs. His experience with the *C-8* litigation had him overseeing thousands of personal injury

cases, evaluating general and specific causation experts under the *Daubert* standard, ruling upon motions for summary judgment, and understanding the method and mechanics of hydrology, geology, and engineering of PFC contamination into the environment from a single source, as the *C-8* case involved a manufacturing facility. In addition to manufacturing facilities, the proposed MDL would include contamination from airports, airbases, fire-training facilities, and will be similar in terms of contamination and exposure pathways. The majority of these cases involve PFC contamination of a water supply of some sort from a specific facility. This is what Judge Sargus oversaw for years with *C-8* and what makes him uniquely qualified in the federal judiciary to oversee the present litigation should the court order consolidation.

## CONCLUSION

For the reasons set forth above, if the Panel determines that these actions should be centralized, it should be transferred to Chief Judge Edward A. Sargus, Jr. of the United States District Court for the Southern District of Ohio.

Dated: October 19, 2018　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　/s/ Paul J. Napoli
　　　　　　　　　　　　　　　　　　　　　　Paul J. Napoli, Esq.
　　　　　　　　　　　　　　　　　　　　　　Hunter J. Shkolnik, Esq.
　　　　　　　　　　　　　　　　　　　　　　Napoli Shkolnik, PLLC
　　　　　　　　　　　　　　　　　　　　　　360 Lexington Ave., 11th Floor
　　　　　　　　　　　　　　　　　　　　　　New York, New York 10017
　　　　　　　　　　　　　　　　　　　　　　Phone: (212) 397-1000
　　　　　　　　　　　　　　　　　　　　　　Fax: (646) 843-7603
　　　　　　　　　　　　　　　　　　　　　　Email: *pnapoli@napolilaw.com*
　　　　　　　　　　　　　　　　　　　　　　Email: *hunter@napolilaw.com*

　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*